U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY - 5 2009

CLERK, U.S. DISTRICT COURT
By _____
          Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

PETER LEE HINOJOSA,                  §
                                     §
            Plaintiff,               §
                                     §
VS.                                  §   NO. 4:08-CV-315-A
                                     §
TARRANT COUNTY, TEXAS, and           §
TOM WILDER, individually,            §
                                     §
            Defendants.              §

MEMORANDUM OPINION
and
ORDER

After having considered the motion for summary judgment of defendants, Tarrant County, Texas ("County"), and Tom Wilder ("Wilder"), the response of plaintiff, Peter Lee Hinojosa, defendants' reply, the summary judgment record, and pertinent legal authorities, the court has concluded that the motion should be granted, and that all of plaintiff's alleged claims and causes of action should be dismissed.

I.

Plaintiff's Claims

In his first amended complaint filed June 16, 2008, plaintiff alleges that he was terminated from employment with the District Clerk's office, in violation of his First Amendment rights, following his unsuccessful candidacy for District Clerk

in the March 2006 Republican primary election. Plaintiff also claims that as a result of his participation in that election, defendants caused the County Clerk to withdraw an offer of employment.

II.

## The Summary Judgment Motion

Defendants contend that they are entitled to summary judgment on all of plaintiff's claims because he cannot establish a prima facie case of First Amendment retaliation, specifically because (1) his workplace speech was unprotected, but in any event, (2) defendants' interest in maintaining efficiency within the District Clerk's office outweighed plaintiff's protected speech, and (3) he cannot establish causation between his protected speech and his termination. As to County, defendants argue that plaintiff cannot establish causation because the County Commissioners Court adopted a budget reorganizing the District Clerk's office for legitimate purposes, plaintiff cannot establish that the Commissioners Court had retaliatory motives in deciding to approve the reorganization that eliminated his position, and causation cannot be imputed from Wilder to County. As to Wilder, defendants contend that he was not the final decision maker as to the elimination of plaintiff's position,

2

Wilder had a legitimate, non-retaliatory motive for the reorganization that eliminated plaintiff's position, and plaintiff cannot overcome Wilder's qualified immunity. Finally, defendants argue that plaintiff cannot demonstrate that he was not hired for a position in the County Clerk's office in retaliation for opposing Wilder in the Republican primary. Defendants also assert that the after-acquired evidence doctrine precludes plaintiff's entitlement to back pay, front pay, or reinstatement.

III.

Facts

The facts set forth below are undisputed in the summary judgment record:

County is a governmental body within the State of Texas. County's principal governing body is the Commissioners Court, which consists of one elected County Judge and four elected Commissioners. Article 5, Section 9 of the Texas Constitution provides that County is to elect a District Clerk who manages the District Clerk's Office and is elected every four years.

Within County government, creation of new, or elimination of existing, positions occurs within the budget process. These actions occur nearly every year in County government as

3

departments try to improve efficiency, address change, and deal with budget issues. The budget process begins with a departmental proposal, proceeds to a Budget Officer's recommendation, and concludes with the Commissioners Court, which has final decision-making authority on budgetary matters.

As the first step in the budget process, each department internally develops a written budget proposal and submits it to County's Budget Officer during the month of May. The departmental proposal may include a request for a reorganization entailing the creation and/or elimination of positions.

The Budget Officer is Director of the County's Budget and Risk Management Department and is appointed by the Commissioners Court. At the time of the events giving rise to this action, County's Budget Officer was Debbie Schneider ("Schneider"). Upon receipt of each department's budget proposal, Schneider reviews and analyzes the documents submitted, interviews officials from each department, and can require justification for the department's budget proposal or any other information concerning their proposed budgets she deems necessary. Schneider considers necessity, merit, efficiency, and how the budget for a department fits with the rest of the County's budget. As salaries and benefits account for approximately sixty-six percent of County's

budget, Schneider may, at her discretion in the course of preparing a balanced budget, recommend the creation or elimination of certain positions. After review of each department's budget proposal, Schneider develops for that department her own budget recommendation that may adopt, not adopt, or modify the department's proposal. Schneider's recommendation is independent and frequently differs from the department's initial budget proposal, often causing disagreement between her and the department head. Schneider submits her proposed budget for each department to the Commissioners Court.

The final step of the budget process is the Commissioners Court's exercise of its final decision-making authority. The Commissioners Court considers Schneider's recommendation, department by department, in conjunction with each department's initial proposal. As part of the budget process the Commissioners Court conducts public hearings, considers any comments or concerns, and may engage in its own discussion about each department's budget proposal. The Commissioners Court may ultimately adopt, modify, or not adopt, Schneider's recommendations. After evaluating all the evidence, the Commissioners Court, by majority vote, exercises final decision-making authority to adopt a budget that may, among other things,

create certain new positions or eliminate certain existing
positions. Through exercise of the power to grant or withhold
funding, the Commissioners Court decides, among other things,
departmental budget matters, including the numbers of and types
of positions in each department, and it may and has previously
changed the number of positions requested by the departments. The
new budget is effective October 1, the start of County's fiscal
year.

In the budget process, the District Clerk has the same
authority as any other department head, meaning he submits a
budget proposal to Schneider for her review, recommendation, and
forwarding to the Commissioners Court for final approval. The
District Clerk has no authority to eliminate existing positions
or create new ones, tasks which fall within the budgeting
authority of the Commissioners Court.

Prior to October 1, 2006, the effective date of the
reorganization that eliminated plaintiff's position, the general
organization of the District Clerk's office included an
Operations Manager, a position held by Clete McAlister
("McAlister") until late 2005, who reported directly to Wilder, a
Civil Manager, Family Manager, Criminal Manager, Accounting &
Trust Manager, Information Technology ("IT") Systems Manager, and

Records Room Manager, all of whom reported directly to the
Operations Manager. At the time of the events at issue, plaintiff
held the position of Civil Manager, where he supervised
approximately thirty-five employees of the Civil Division.

By the end of 2004 and beginning of 2005, a number of
workload factors began to affect the District Clerk's office. The
total number of cases filed--including civil, criminal, family,
and juvenile--increased from 44,456 in fiscal year 2000 to 53,957
in fiscal year 2005, while the number of pending cases during
that time frame increased from 33,131 to 37,614. The number of
non-management level clerks performing front-line work did not
keep pace with the increasing workload. Also during the time from
2002 to 2004 the District Clerk's office began to enhance the
computerization of certain functions, such as moving from dial-up
technology to web-access technology for remote viewing of court
documents, which entailed scanning of all documents. This
significantly increased the workload in the District Clerk's
office. The increased workload, however, did not translate into
additional front-line workers.

Prior to 2005, the Commissioners Court was involved in
planning for a new courts building, which at one time was
anticipated to hold both civil and family courts. During that

7

time period, Wilder had discussions with then-Commissioner Glenn
Whitley[1], regarding a proposed reorganization of the District
Clerk's office whereby some management positions would be
eliminated if the new building held civil and family courts.
During this time period, Wilder also discussed with G.K. Maenius
("Maenius"), Chief Operating Officer for County, the idea of a
one building-one manager concept, whereby if the new building
held the civil and family courts, these sections might not need
as many managers. Wilder on one occasion also commented to
McAlister that, after construction of the new building, he wanted
to look at combining the civil and family law functions. As
constructed, however, the building houses only family courts, so
any such proposal was rendered moot.

Other changes with the potential to affect the District
Clerk's office were considered during 2005. Prior to May 2005,
the Commissioners Court discussed building a new jail facility on
County property approximately eight miles north of downtown Fort
Worth and relocating the criminal courts and the District Clerk's
criminal division to that location as well. Also during the fall
of 2005, Wilder raised with the County Auditor the possibility of

---

[1]Whitley was elected County Judge in 2006.

her office taking over the District Clerk's accounting function.
Eventually the Commissioners Court decided against moving the
jail and criminal courts out of downtown, and Wilder and the
County Auditor agreed to abandon the idea of consolidating the
District Clerk's accounting functions under the County Auditor.
Wilder instead decided to submit the alternative proposal that
the Accounting Manager position be eliminated and the Operations
Manager supervise the four remaining accounting employees.

In November 2005, McAlister announced his resignation as
Operations Manager, as he had accepted another position in a
different County department. At the suggestion of Maenius, on or
about December 2, 2005, Wilder appointed a Senior Manager in
order to have someone to fill in for him in the event of his
absence or incapacitation, since the Operations Manager position
was vacant. Wilder selected Richard Guttenfelder
("Guttenfelder"), then Criminal Manager, for the position.

Also during the fall 2005 time frame the Commissioners Court
discussed combining the information technology sections of all
departments, including the District Clerk, into a single county-
wide department. As a result of these discussions, Wilder in
November or early December 2005 told Doug Gowin ("Gowin"), who at
that time occupied the position of IT Systems Manager in the

District Clerk's office, that he was considering a reorganization that would eliminate certain positions, including plaintiff's, and asked if he had any interest in the Operations Manager position vacated by McAlister. Gowin did not provide an answer at that time.

On December 9, 2005, plaintiff made the required filings to run against Wilder as a candidate for District Clerk in the March 2006 Republican primary. During the campaign plaintiff called Wilder a "liar," accused him of fabricating data pertaining to the District Clerk's office functions, and accused him of "politicizing" the office. Defs.' App. at 644, 646, 651. During the campaign, Wilder promised a significant reorganization of his office that would reallocate resources and save money. Plaintiff also proposed a reorganization of the District Clerk's office, although his proposal differed from Wilder's. A number of employees of the District Clerk's office supported plaintiff in the primary instead of Wilder. The primary election was held March 7, 2006; Wilder won with approximately seventy-four percent of the vote, and was subsequently reelected in the general election.

In April 2006, Wilder posted the vacant Operations Manager position. Gowin was selected to fill the position.

10

Although the parties dispute the exact time line, Wilder did develop a reorganization proposal that included eliminating four high-level management positions: Civil Manager, Accounting Manager, IT Systems Coordinator, and Records Room Manager[2]. The proposal also recommended creating six new positions: Chief Deputy, IT Systems Analyst, Associate Tax Clerk, Associate Clerk IV-D/Family, Associate Clerk-Juvenile, and Associate Clerk-Passports. Because Wilder had no authority to unilaterally implement a reorganization that involved the creation or elimination of positions, on May 15, 2006, he submitted the proposed reorganization as part of his budget proposal to Schneider per County procedure. Wilder's stated reasons for the proposed reorganization were "[g]reater efficiency, greater productivity, reduction in costs." Defs.' App. at 613. On May 15, 2006, Wilder notified plaintiff via letter that his position was not in the fiscal year 2007 budget proposal, and his position would end on September 30, 2006.

After receipt of Wilder's budget proposal, Schneider, Jay Singleton, Assistant County Administrator, and Jane Sanford, County Judge Executive Administrator, met with Wilder, Gowin, and

---

[2]The position of Records Room Manager was held by Cruz Hernandez, who supported neither Wilder nor plaintiff in the primary.

Tammy Scarbrough, Wilder's Administrative Assistant. Schneider asked Wilder to justify his budget proposal, including justification for the proposed new positions, and to explain how his office could function effectively with the proposed position eliminations.

In early August, Schneider submitted her recommendation for Wilder's budget proposal to the Commissioners Court. While Wilder had proposed six new positions, Schneider recommended only three: the Associate Clerk-Tax, Associate Clerk-Title IV-D, and Associate Clerk, Juvenile. Schneider also rejected Wilder's request for $40,000 for temporary workers and $29,960 for capital expenditures. Schneider accepted Wilder's proposal to eliminate the four high-level management positions. Overall, Schneider proposed $7,443,556 for fiscal year 2007 salaries for the District Clerk's office, which was $344,353 less than the amount appropriated for the office's salaries for fiscal year 2006.

On August 15, 2006, the Commissioners Court held a public hearing wherein they discussed Wilder's budget proposal. Although the hearing was open to the public, and any member of the public was welcome to comment on the proposal, plaintiff did not attend or speak at the meeting. By a vote of four to one, the Commissioners Court adopted a budget for the District Clerk's

12

office that differed from both Schneider's and Wilder's proposals. The Commissioners Court budget included $2,000 of the $29,960 Wilder requested for capital expenditures and $21,530 of the $40,000 he requested for temporary workers, adopted the elimination of the four high-level management positions, including plaintiff's, and created four new lower-level positions--the three proposed by Schneider, plus the Associate Clerk-Passports recommended by Wilder. Overall the budget adopted by the Commissioners Court resulted in a total annual salary savings of approximately $326,284. The new budget was effective October 1, 2006.

After October 1, 2006, Guttenfelder, formerly the Criminal Division Manager, became the Justice Center Building Manager with jurisdiction over both the Civil and Criminal divisions. As of September 30, 2006, plaintiff retired from employment with County.

Suzanne Henderson ("Henderson") is the County Clerk, an elected official. Henderson has sole authority to fill vacant positions within the County Clerk's office. Neither the Commissioners Court, nor any elected official, has authority to instruct or direct Henderson on who she should or should not select to fill vacant positions.

The position of Operations Manager in the County Clerk's office became vacant in December 2007. Henderson contacted plaintiff to discuss his possible interest in the position, but advised him that she first had to post the job, create an eligibility list, and conduct interviews pursuant to County procedure. In March 2008 Henderson interviewed plaintiff, among other candidates. Unbeknownst to Henderson, plaintiff secretly tape-recorded his interview, as well as other conversations between himself and Henderson. Henderson ultimately decided against hiring plaintiff for the position. The position of Operations Manager interfaced regularly with the District Clerk's office, and Henderson had previously had conflicts with Wilder. During his interview plaintiff had informed Henderson about his own conflict with Wilder. Henderson was concerned that hiring plaintiff would only exacerbate the friction between her office and the District Clerk's office. Henderson eventually selected another individual she considered to be the most qualified applicant for the position.

IV.

## Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. <u>Anderson</u>, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of the pleadings, but must set forth specific facts showing a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 248, 256. To meet this burden, the nonmovant must

15

"identify specific evidence in the record and articulate the
'precise manner' in which that evidence support[s] [its]
claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994).
An issue is material only if its resolution could affect the
outcome of the action. Anderson, 477 U.S. at 248. Unsupported
allegations, conclusory in nature, are insufficient to defeat a
proper motion for summary judgment. Simmons v. Lyons, 746 F.2d
265, 269 (5th Cir. 1984).

V.

Analysis

A.   Plaintiff's Claim of First Amendment Retaliation

To establish a prima facie case of retaliation for the
exercise of his First Amendment rights, plaintiff must show that
(1) he suffered an adverse employment action; (2) his speech
involved a matter of public concern; (3) plaintiff's interest in
the speech outweighed defendants' interest in promoting
governmental efficiency; and (4) the protected speech caused the
adverse employment decision. See Alexander v. Eeds, 392 F.3d 138,
142 (5th Cir. 2004); Beattie v. Madison County Sch. Dist., 254
F.3d 595, 601 (5th Cir. 2001).

The parties agree, as they must, that plaintiff suffered an
adverse employment action. As to the second element, although

16

defendants dispute that plaintiff's speech involved a matter of public concern, their briefing on this topic primarily concerns plaintiff's work-related conduct occurring prior to the date he filed to run in the March 2006 Republican primary. While defendants' analysis of this conduct as unprotected speech may be accurate, the court agrees with plaintiff that it is apparent from the face of his complaint that he contends that only his candidacy for District Clerk in the Republican primary is subject to First Amendment protection. Becoming a candidate for public office is protected First Amendment activity. Accordingly, the first two elements favor plaintiff.

Whether or not the balancing of interests required to establish the third element favors plaintiff, the court finds resolution of the fourth element--causation--dispositive of his claims. To establish causation plaintiff must show that his protected speech was a substantial or motivating factor in defendants' actions. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). Should plaintiff do so, the burden then shifts to defendants to show that they would have terminated plaintiff's employment absent his protected speech. Id.; see also Beattie, 254 F.3d at 600. Although this element ordinarily turns on a question of fact, James v. Collin County,

17

535 F.3d 365, 376 n.10 (5th Cir. 2008), summary judgment may be appropriate where the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. Id.; Forsyth, 19 F.3d at 1533.

     1. No Causation As To Wilder

    "As to causation, only final decision-makers may be held liable for First Amendment retaliation employment discrimination under § 1983." Johnson v. Louisiana, 369 F.3d 826, 831 (5th Cir. 2004). Perhaps recognizing this reality, plaintiff makes the conclusory assertion that "Wilder acted officially and on behalf of the County when he eliminated plaintiffs' [sic] position[], making him the final decision maker for this purpose." Pl.'s Br. at 9. The problem with this assertion, aside from the lack of summary judgment evidence in support, is that it incorrectly states the law. Whether a municipal official possesses final policymaking authority is a question of state law. City of St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988). The parties do not dispute that under Texas law sole authority for approving County's budget is vested with the Commissioners Court. Loc. Gov't Code Ann. § 111.068. Nor does plaintiff dispute that authorization to eliminate positions in County rests in the budgetary process vested in the Commissioners Court. Wilder could

18

not exercise budgetary authority that state law vests with County's governing body, and plaintiff has come forward with no summary judgment evidence to show otherwise. Wilder's proposal to eliminate plaintiff's position was just that--a proposal--until the Commissioners Court exercised its statutory authority to adopt or not adopt the proposal through the budget process.

Defendants, in contrast, offer uncontroverted evidence that on May 15, 2006, Wilder submitted a budget proposal that included the elimination of four high-level positions, including plaintiff's, to Schneider, County's Budget Officer, per County procedure; that Schneider reviewed and subsequently recommended revisions to the budget proposal; and that the Commissioners Court in August 2006 adopted a budget that differed from both Schneider's and Wilder's proposals but included the reorganization eliminating four positions, including plaintiff's.

The cases cited by plaintiff are inapposite, as none holds that a county official, in whom is vested no final budget-approval authority, is a final policy maker when the governmental entity with budget authority approves his budget proposal that eliminates positions. See, e.g., Beattie, 254 F.3d at 602-03 (official proposing plaintiff's termination not final decision maker because school board exercised oversight over termination

19

decision); <u>Brady v. Fort Bend County</u>, 145 F.3d 691, 700-02 (5th

Cir. 1998)(sheriff final decision maker because state law vested

in him exclusive policymaking authority as to employment of

deputies); <u>Davis v. Ector County</u>, 40 F.3d 777, 784 (5th Cir.

1994)(district attorney final decision maker where he had

authority to terminate "without oversight"). Under the facts

before the court, plaintiff has failed to establish that Wilder

was the final decision maker who approved the proposed budget

that eliminated his position.

    2. <u>No Causation As To County</u>

    Liability for a local government arises under § 1983 only

when execution of the local government's policy or custom causes

the injury. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694

(1978). A local government faces no vicarious liability for

rights violations committed by its employees; however, liability

may arise when the local government's official policies cause its

employees to violate another's constitutional rights. <u>Id.</u> at 691.

"[A] single action by a municipal official possessing final

policymaking authority regarding the action in question

constitutes the official policy of the municipality. . . ."

<u>Brady</u>, 145 F.3d at 698 (citing <u>McMillian v. Monroe County</u>, 520

20

U.S. 781, 784-85 (1997)).[3] Whether a local government official possesses final policymaking authority is a question of state law. Praprotnik, 485 U.S. at 124.

As discussed previously, it is undisputed, and even conceded by plaintiff, that state law vests final policymaking authority for budgetary matters with the Commissioners Court. Wilder was even further removed from final budget authority, as he was required to submit a proposed budget, including any proposed elimination or addition of positions, to County's Budget Officer, who considered the proposal and made an independent recommendation to the Commissioners Court. The Commissioners Court then made the final budget decision. Because Wilder held no final policymaking authority over the budget decision that eliminated plaintiff's position, he committed no act which could be considered an official policy of County.

---

[3]Although defendants, citing Fifth Circuit law, refer to County in the context of "municipal" or "municipality" liability, the court is unaware of any provision in Texas law construing a county as a municipality. Nevertheless, the court finds the distinction immaterial to resolution of the summary judgment motion, as Supreme Court and Fifth Circuit precedent make clear that the municipality analysis applies to "local government," including a county. See, e.g., Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); Brady v. Fort Bend County, 145 F.3d 691, 700-02 (5th Cir. 1998)(applying municipality analysis under Monell to county-defendant).

Plaintiff argues that "an official may be a policymaker (decision maker in our case) for the county in a particular area or on a particular issue" and that "[o]nly if the County Commissioners Court oversaw the *precise* issue or action in question does it become the decision maker." Pl.'s Br. at 9-10 (citing <u>Beattie</u>, 254 F.3d at 602-03)(emphasis in original). Thus, on the basis of Wilder as official policymaker, plaintiff argues that Wilder's alleged termination of plaintiff is legally binding on County. Plaintiff misapprehends these statements of law. As <u>Beattie</u> explained, an official may be a policymaker for a county only when so authorized by state statute, which is undisputedly absent here. <u>See</u> <u>Beattie</u>, 254 F.3d at 602-03. Further, plaintiff does not explain how County did not oversee the precise action in question here--approving a budget proposal that included a reorganization eliminating plaintiff's position.

Because plaintiff cannot establish that Wilder was an official policymaker, and because he has conceded he has no evidence of any retaliatory intent towards him by any member of the Commissioners Court, he may only impute liability to County by establishing either that the Commissioners Court "rubber-stamped" Wilder's proposal, or that Schneider and the Commissioners Court approved of a retaliatory basis for Wilder's

22

proposal. The summary judgment evidence establishes neither.

Under the "rubber stamp" exception, plaintiff must show that the "ultimate decision maker's action is merely a 'rubber stamp' for the subordinate's recommendation." Rios v. Rossotti, 252 F.3d 375, 382 (5th Cir. 2001). Under County's budget procedure, department heads submit a budget proposal to the Budget Officer, who reviews the proposal, discusses it with the department head, and makes an independent recommendation to the Commissioners Court. The Commissioners Court holds public hearings and accepts or modifies the Budget Officer's recommendation. The summary judgment record offers undisputed evidence that Wilder followed this procedure when he submitted the 2006 reorganization proposal. Schneider reviewed Wilder's proposal, met with Wilder, Gowin, and Scarbrough to discuss the proposal, and asked Wilder to explain how his office could function effectively with the proposed positions eliminated. Schneider recommended a proposed budget to the Commissioners Court that varied from Wilder's proposal. The Commissioners Court conducted public hearings and held discussions among themselves about the proposed budget. At the conclusion of this review process, the Commissioners Court adopted a budget for the District Clerk's office that differed from both Wilder's and Schneider's proposals. Not only did

23

plaintiff concede that the Commissioners Court does not "rubber stamp" budgets, nothing in this undisputed process carries any indicia of a "rubber stamp."[4]

Having failed on the "rubber stamp" exception, plaintiff may only prevail if he can impute Wilder's allegedly retaliatory motive to the Commissioners Court by demonstrating that they approved not only his decision but also a retaliatory basis for it. Praprotnik, 485 U.S. at 127. Plaintiff again has made no such showing. The Commissioners who voted to adopt a budget that included the elimination of plaintiff's position explained their reasons for their vote: saving money. Most significantly, they emphasized that they had no evidence or reason to believe that any retaliatory motive was the real reason for the proposed reorganization.  Then-Commissioner Whitley confirmed that if he had any reason to believe that retaliation formed the basis of the proposed reorganization, he would not have supported the proposal. Plaintiff not only offers no controverting evidence, he does not even dispute these assertions.

Plaintiff apparently relies heavily on a statement by Commissioner Brooks that the proposed reorganization "didn't pass

---

[4]Plaintiff has not accused the Budget Officer of acting with retaliatory intent.

the smell test." Defs.' App. at 15. Brooks explained this
statement as follows:

> What I was referring to and anticipating was possible
> litigation that might result and be based on the
> allegations that elimination of the positions was due
> to racial discrimination or political retaliation.
> These allegations had already received media coverage.
> I voted against the budget that the Commissioners Court
> adopted because I was concerned that the timing would
> almost surely result in litigation and I did not want
> the County to have to deal with adverse publicity or
> the costs of litigation. . . .
>
> . . . .
>
> I did not have any factual information that the
> proposals or the budget that the Commissioners Court
> adopted were based on any improper grounds. . . .

Id. Plaintiff offers no summary judgment evidence to controvert

Brooks's explanation of his "smell test" statement, or to show

that Brooks in fact harbored retaliatory intent or knew that

Wilder harbored such intent.

Plaintiff also attempts to rely on the close timing between

the primary race in March 2006 and the elimination of his

position upon vote of the Commissioners Court in August 2006.

"Timing alone does not create an inference that the termination

of a public employee was in retaliation for protected speech,"

especially where, as here, there is an absence of summary

judgment evidence demonstrating retaliatory intent. Beattie, 254

F.3d at 605.

Plaintiff contends that under defendants' theory, "no one is responsible for plaintiff having no job with the Tarrant County District Clerk's office." Pl.'s Br. at 9. Plaintiff confuses responsibility with liability. As explained above, responsibility does not translate into liability for unlawful retaliation absent proof of the type described herein. Plaintiff has adduced no such summary judgment proof.

B.   Plaintiff's Claim Regarding Other County Employment

In the amended complaint, plaintiff contends that Henderson made a tentative offer of employment with the County Clerk's office, which she subsequently withdrew allegedly due to defendants' interference. Defendants have offered uncontroverted summary judgment evidence that not only did Henderson never tender an offer of employment to plaintiff, but even if she had done so, defendants could not, and did not, influence or affect that offer of employment in any manner.[5] Plaintiff's response is silent as to the interference/failure to hire claim. Accordingly, that claim is waived. See Keenan v. Tejeda, 290 F.3d 252, 262

---

[5]Plaintiff admitted in deposition that he tape-recorded his job interview and other conversations with Henderson without her knowledge. Defs.' App. at 681-82. After learning of this clandestine activity, Henderson stated in her affidavit that this behavior alone would have caused her not to extend plaintiff an offer of employment.

(5th Cir. 2002).

C.   <u>Plaintiff's Other Summary Judgment Grounds</u>

As the court finds dispositive the lack of causation as to both defendants, it need not reach the remaining grounds in the summary judgment motion.

VI.

<u>Conclusion and Order</u>

For the reasons discussed above, the court concludes that defendants' motion for summary judgment should be granted.

Therefore,

The court ORDERS that all claims and causes of action asserted by plaintiff, Peter Lee Hinojosa, against defendants, Tarrant County, Texas, and Tom Wilder, be, and are hereby, dismissed with prejudice.

SIGNED May __5__, 2009.

JOHN McBRYDE
United States District Judge

27